THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| AVIA ENERGY | § | CASE NO. 05-39339-bjh-11 |
| DEVELOPMENT**,** L.L.C., et al, | § | |
| | § | (Chapter 11) |
| DEBTORS. | § | Jointly Administered |

---

| | | |
|---|---|---|
| AVIA ENERGY DEVELOPMENT, LLC; | § | |
| AVIA DE MEXICO S. DE R.L. DE CV.; | § | |
| AND JAMES MUSSELMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | |
| CARLOS FRANCISCO NAVARRO AND | § | |
| MICHAEL FARMAR, JACK M. LAFIELD | § | ADVERSARY NO. 06-03122-bjh |
| AND DAVID W. ELROD | § | |
| | § | |
| Defendants & Third-Party Plaintiff, | § | |
| v. | § | |
| | § | |
| KIMBERLY A. ELKJER, | § | |
| SCHEEF & STONE, L.L.P., CURTIS L. | § | |
| MARSH, MARVIN R. MOHNEY | § | |
| | § | |
| Third-Party Defendants. | § | |

## DEFENDANT NAVARRO'S, DEFENDANT FARMAR'S, AND DEFENDANT'S ELROD'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT

Defendant Dr. Carlos D. Navarro ("Dr. Navarro"); Michael Farmar ("Farmar") and David W.

Elrod ("Elrod") (collectively "Defendants") file this, their Original Answer, Affirmative Defenses,

Counterclaim, and Third-Party Complaint, as follows:[1]

---

[1] This pleading is filed subject and does not waive Dr. Navarro's and Farmar's previously filed motion to dismiss, which is currently pending before the Court.

## I.
### DEFENDANTS' ORIGINAL ANSWER

1.       An answer to Paragraph 1 is not required because that paragraph does not contain any factual allegations, but rather constitutes a summary of Plaintiffs' requested relief.  Defendants deny that Plaintiffs are entitled to the relief requested in their Complaint or to any other relief whatsoever. To the extent a response to Paragraph 1 is required, Defendants deny the allegations, if any, contained in Paragraph 1 of the Complaint.

2.       Defendants admit that Avia Energy Development Corporation, LLC is a Texas limited liability company.  Defendants deny that Musselman properly has the right, powers, and duties of a debtor-in-possession.  Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 2 of the Complaint.

3.       Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4.       Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5.       Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6.       Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7.       In response to the allegations in paragraph 7 of the Complaint, Defendants believe that, upon information and belief that Defendant Lafield is an individual residing in Dallas County, Texas.  Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 7 of the Complaint.

8.       Defendants admit the allegations contained in Paragraph 8 of the Complaint.

9.       An answer to Paragraph 9 is not required because that paragraph does not contain any factual allegations, but rather constitutes a summary of statutes relied upon by Plaintiffs.  Defendants

deny that Plaintiffs are entitled to the relief requested in their Complaint or to any other relief whatsoever. To the extent a response to Paragraph 9 is required, Defendants deny the allegations, if any, contained in Paragraph 9 of the Complaint.

10.     An answer to Paragraph 10 is not required because that paragraph does not contain any factual allegations, but only asserts legal conclusions. Defendants deny that Plaintiffs are entitled to the relief requested in their Complaint or to any other relief whatsoever. To the extent a response to Paragraph 10 is required, Defendants deny the allegations, if any, contained in Paragraph 10 of the Complaint.

11.     An answer to Paragraph 11 is not required because that paragraph does not contain any factual allegations, but only asserts legal conclusions. Defendants deny that Plaintiffs are entitled to the relief requested in their Complaint or to any other relief whatsoever. To the extent a response to Paragraph 11 is required, Defendants deny the allegations, if any, contained in Paragraph 11 of the Complaint.

12.     In response to the allegations contained in Paragraph 12 of the Complaint, Defendants admit that they are individuals residing in Dallas County, Texas. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 12 of the Complaint.

13.     An answer to Paragraph 13 is not required because that paragraph does not contain any factual allegations, but only asserts legal conclusions. Defendants deny that Plaintiffs are entitled to the relief requested in their Complaint or to any other relief whatsoever. To the extent a response to Paragraph 13 is required, Defendants deny the allegations, if any, contained in Paragraph 13 of the Complaint.

14.     In response to the allegations contained in Paragraph 14 of the Complaint, Defendants

admit that Avia USA and Avia de Mexico filed for bankruptcy on August 18, 2005. Defendants deny that these filings were proper, made in good faith, or properly authorized. Defendants further deny the remaining allegations, if any, contained in Paragraph 14 of the Complaint.

15.     In response to the allegations contained in Paragraph 15 of the Complaint, Defendants admit that nearly $2,000,000 is currently held in an escrow account at Amegy Bank, but deny that these funds are the property of Avia USA or Avia de Mexico. Defendants further admit that Gomez has frozen approximately $320,000 of funds in Mexico, but deny that either Avia USA or Avia de Mexico is entitled to those funds. Defendants are unaware of any additional funds belonging to either Avia entity currently held in Mexico. Defendants further deny the remaining allegations, if any, contained in Paragraph 15 of the Complaint.

16.     In response to the allegations contained in Paragraph 16 of the Complaint, Defendants admit that Avia USA's initial ownership structure was as follows: Musselman—60%; Jack Lafield—20%; and John Hughett—20%. Defendants deny that this is the current ownership structure. Defendants further deny the remaining allegations, if any, contained in Paragraph 16 of the Complaint.

17.     Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     In response to the allegations contained in Paragraph 18 of the Complaint, Defendants admit that the initial officers of Avia de Mexico were Musselman, Lafield, and Hughett. Defendants deny that these individuals remained the officers of Avia de Mexico or that they were the only individuals to work on behalf of Avia de Mexico. Defendants further deny the remaining allegations, if any, contained in Paragraph 18 of the Complaint.

19.     In response to the allegations contained in Paragraph 19 of the Complaint, Defendants

admit that one of the business opportunities that Avia de Mexico participated in was a venture with Protexa and involved drilling 38 natural gas wells in Northern Mexico's Burgos Basin. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 19 of the Complaint.

20.    In response to the allegations contained in Paragraph 20 of the Complaint, Defendants admit that Pemex ultimately cancelled the contract with Protexa and refused to pay certain monies due under the contracts. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 20 of the Complaint.

21.    In response to the allegations contained in Paragraph 21 of the Complaint, Defendants admit that Avia de Mexico, along with other companies involved in the drilling, including Protexa, worked to recover the monies Pemex owed under the contract and that ultimately the International Court of Arbitration ruled against Pemex. Defendants further admit that Pemex ultimately paid more than $16,000,000 dollars to settle the dispute regarding the arbitration award. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 21 of the Complaint.

22.    In response to the allegations contained in Paragraph 22 of the Complaint, Defendants admit that after Pemex paid the amount it agreed to pay under the arbitration award, certain payments were made to various participants in the venture. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 22 of the Complaint.

23.    In response to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that in January 2003 Musselman attempted to fraudulently and improperly transfer funds belonging to Avia de Mexico. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 23 of the Complaint.

24.    In response in Paragraph 24 of the Complaint, Defendants respond that they lack

sufficient information and belief regarding the actions of Musselman and other third parties to admit or deny the allegations in Paragraph 24 and, accordingly, deny those allegations.

25.     Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26.     In response to the allegations contained in Paragraph 26 of the Complaint, Defendants admit that Navarro properly purchased and Lafield properly transferred Avia USA's 99% interest in Avia de Mexico to Dr. Navarro.     Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 26 of the Complaint.

27.     In response in Paragraph 27 of the Complaint, Defendants respond that they lack sufficient information and belief regarding the actions of Musselman and other third parties to admit or deny the allegations in Paragraph 27 and, accordingly, deny those allegations.     Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 27 of the Complaint.

28.     In response to the allegations contained in Paragraph 28 of the Complaint, Defendants admit that Musselman, individually, and improperly acting as the representative of Avia de Mexico, commenced a civil lawsuit against Dr. Navarro and Bancomer on or about April 14, 2003. Defendants further admit that Musselman subsequently dismissed Bancomer and that other parties, such as Farmar and Lafield were later joined as parties.     Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 28 of the Complaint.

29.     In response to the allegations contained in Paragraph 29 of the Complaint, Defendants admits that Defendant Elrod represented Dr. Navarro in the state court action and continues to represent Dr. Navarro in this action today.     Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 29 of the Complaint.

30.     In response to the allegations contained in paragraph 30 of the Complaint, Defendants

admit that certain funds are currently held in an escrow account in Amegy Bank and that those funds are controlled by the binding Rule 11 Agreement. Defendants further admit that but for the wrongful conduct of Musselman, Elkjer, Marsh and Mahoney, those funds would have been distributed in accordance with the binding Rule 11 Agreement. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 30 of the Complaint.

31. Defendants deny the allegations contained in Paragraph 31 of the Complaint.

32. In response to the allegations of Paragraph 31, Dr. Navarro admits that he in the current and proper owner of Avia de Mexico. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 32 of the Complaint.

33. Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34. In response to the allegations contained in Paragraph 34 of the Complaint, Defendants admit that Judge Hartman entered an order granting Musselman's motion for partial summary judgment on or about November 16, 2003. Defendants deny that the motion was properly granted; that the November 16, 2003 Order ever became final; or that the November 16, 2003 Order is currently valid. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 34 of the Complaint.

35. Defendants deny the allegations contained in paragraph 35 of the Complaint.

36. In response to the allegations contained in paragraph 36 of the Complaint, Defendants admit that Musselman initially made Bancomer a party to the state-court litigation, but subsequently dismissed Bancomer. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 36 of the Complaint.

37. Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     In response to the allegations contained in Paragraph 38 of the Complaint, Defendants admit that Dr. Navarro executed several pagares and that the pagares were all executed contemporaneously in late February 2003. Defendants further admit that neither Farmar nor Elrod ever requested, or even had advance knowledge regarding, Dr. Navarro's execution of the pagares. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 38 of the Complaint.

39.     In response to the allegations contained in Paragraph 39 of the Complaint, Defendants admit that Gomez, De Leon, Sampogna, and Farmar initiated claims against Avia de Mexico in Mexico and that these claims were filed in 2003—nearly two years before Musselman caused the filing of these bankruptcy proceedings. Defendants further admit that information regarding these suits was rapidly provided to Musselman, Elkjer and Marsh. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.     In response to the allegations contained in Paragraph 41 of the Complaint, Defendants admit that Dr. Navarro executed several pagares and that the pagares were all executed contemporaneously in late February 2003. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 41 of the Complaint.

42.     In response to the allegations contained in Paragraph 42 of the Complaint, Defendants admit that Dr. Navarro has testified that he was told by Gomez, De Leon and Sampogna that the execution of the pagares was simply necessary to reduce potential tax liabilities of Avia de Mexico and would not be used to collect monies from Avia de Mexico. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 42 of the Complaint.

43. In response to the allegations contained in Paragraph 43 of the Complaint, Defendants admit that Farmar has been, and currently is, represented by David Elrod in various matters. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 43 of the Complaint.

44. In response to the allegations contained in Paragraph 44 of the Complaint, Defendants admit that Farmar has been, and currently is, represented by David Elrod in various matters. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 44 of the Complaint.

45. Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46. In response to the allegations contained in Paragraph 46 of the Complaint, Defendants admit that Dr. Navarro filed a motion for reconsideration of Judge Hartman's Summary Judgment Order shortly before April 13, 2005 and that any need for a hearing on that motion was obviated by the binding Rule 11 Settlement Agreement entered into by the Parties on April 13, 2004. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 46 of the Complaint.

47. In response to the allegations contained in Paragraph 47 of the Complaint, Defendants admit that the Parties entered into a binding Rule 11 Agreement in open Court on April 13, 2004 and that the terms of the binding Rule 11 Agreement are reflected in the transcript of the proceeding dated April 13, 2004. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 47 of the Complaint.

48. In response to the allegations contained in Paragraph 48 of the Complaint, Defendants admit that the Parties entered into a binding Rule 11 Agreement on April 13, 2004, but deny that the terms are accurately described in Paragraph 48. Defendants otherwise deny the remaining allegations,

if any, contained in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations contained in Paragraph 49 of the Complaint.

50.     Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51.     In response to the allegations contained in Paragraph 51 of the Complaint, Defendants admit that following the entry of the binding Rule 11 Agreement, all of the funds required to be liberated and transferred under the binding Rule 11 Agreement were, in fact, liberated and transferred. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 51 of the Complaint.

52.     In response to the allegations contained in Paragraph 52 of the Complaint, Defendants admit that following the entry of the binding Rule 11 Agreement, all of the funds required to be liberated and transferred under the binding Rule 11 Agreement were, in fact, liberated and transferred. Defendants further admit that these funds were deposited into an escrow account as required by the terms of the binding Rule 11 Agreement to be distributed in accordance with terms of the Rule 11 Settlement Agreement. Defendants deny that the funds are the property of the Debtors. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 52 of the Complaint.

53.     In response to the allegations contained in Paragraph 53 of the Complaint, Defendants admit that Plaintiffs' wrongful conduct, coupled with the wrongful conduct of Elkjer and Marsh, permitted Travelers Indemnity Company to garnish funds from the escrow account. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 53 of the Complaint.

54.     In response to the allegations contained in Paragraph 54 of the Complaint, Defendants admit that Gomez has continued to hold funds through a Mexican judicial order in Mexico and that these funds total approximately $320,000. Defendants deny that these funds had to be liberated or

transferred as part of the binding Rule 11 Agreement. Defendants further deny the remaining allegations, if any, contained in Paragraph 54 of the Complaint.

55.     In response to the allegations contained in Paragraph 55 of the Complaint, Defendants admit that counsel for Musselman prepared "settlement documents" after the binding Rule 11 Agreement was entered, but deny that (1) the "settlement documents" prepared by Musselman's counsel accurately reflect the terms of the binding Rule 11 Agreement; or (2) are even required for the Rule 11 Agreement to be effective. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 55 of the Complaint.

56.     Defendants deny the factual allegations contained in Paragraph 56 of the Complaint.

57.     Defendants deny the factual allegations contained in Paragraph 57 of the Complaint.

58.     Defendants deny the factual allegations contained in Paragraph 58 of the Complaint.

59.     No response is required to Paragraph 59 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 59 of the Complaint.

60.     Defendants deny the factual allegations contained in Paragraph 60 of the Complaint.

61.     No response to Paragraph 61, or any of its sub-parts a-h, is required because Paragraph 61 and its sub-parts do not contain any factual allegations. To the extent a response is required, Defendants deny the factual allegations, if any, contained in Paragraph 61 and each of its sub-parts.

62.     No response to Paragraph 62 or each of its sub-parts is required because that paragraph and its sub-parts do not contain any factual allegations. To the extent a response is required, Defendants deny the factual allegations, if any, contained in Paragraph 62 and each of its

sub-parts.

63.    No response is required to Paragraph 63 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 63 of the Complaint.

64.    No response to Paragraph 64 or each of its sub-parts is required because that paragraph and its sub-parts do not contain any factual allegations.  To the extent a response is required, Defendants deny the factual allegations, if any, contained in Paragraph 64 and each of its sub-parts.

65.    No response to Paragraph 65 or each of its sub-parts is required because that paragraph and its sub-parts do not contain any factual allegations.  To the extent a response is required, Defendants deny the factual allegations, if any, contained in Paragraph 65 and each of its sub-parts.

66.    No response is required to Paragraph 66 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 66 of the Complaint.

67.    Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.    No response is required to Paragraph 68 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 68 of the Complaint.

69.    Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.    Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71.    Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.     No response is required to Paragraph 73 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 73 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 73 or to any other relief whatsoever.

74.     No response is required to Paragraph 74 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 74 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 74 or to any other relief whatsoever.

75.     No response is required to Paragraph 75 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 75 of the Complaint.

76.     No response is required to Paragraph 76 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 76 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 76 or to any other relief whatsoever.

77.     No response is required to Paragraph 77 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 77 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 77 or to any other relief whatsoever.

78.     No response is required to Paragraph 78 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the

allegations, if any, contained in Paragraph 78 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 78 or to any other relief whatsoever.

79. No response is required to Paragraph 79 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 79 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 79 or to any other relief whatsoever.

80. No response is required to Paragraph 80 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 80 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 80 or to any other relief whatsoever.

81. Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82. Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83. No response is required to Paragraph 83 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 83 of the Complaint.

84. No response to Paragraph 84 or each of its sub-parts is required because that paragraph and its sub-parts do not contain any factual allegations. To the extent a response is required, Defendants deny the factual allegations, if any, contained in Paragraph 84 and each of its sub-parts.

85. No response is required to Paragraph 85 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 85 of the Complaint. Defendants further deny that

Plaintiffs are entitled to the relief requested in Paragraph 85 or to any other relief whatsoever.

86.     No response is required to Paragraph 86 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 86 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 86 or to any other relief whatsoever.

87.     No response is required to Paragraph 87 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 87 of the Complaint.

88.     Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89.     No response to Paragraph 89 or each of its sub-parts is required because that paragraph and its sub-parts do not contain any factual allegations.  To the extent a response is required, Defendants deny the factual allegations, if any, contained in Paragraph 89 and each of its sub-parts.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 89 or to any other relief whatsoever.

90.     Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.     No response is required to Paragraph 91 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 91 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 91 or to any other relief whatsoever.

92.     No response is required to Paragraph 92 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 92 of the Complaint.

93.     No response is required to Paragraph 93 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 93 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 93 or to any other relief whatsoever.

94.     No response is required to Paragraph 94 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 94 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 94 or to any other relief whatsoever.

95.     No response is required to Paragraph 95 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 95 of the Complaint.

96.     No response is required to Paragraph 96 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 96 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 96 or to any other relief whatsoever.

97.     No response is required to Paragraph 97 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 97 of the Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.     No response is required to Paragraph 99 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 99 of the Complaint.  Defendants further deny that

Plaintiffs are entitled to the relief requested in Paragraph 99 or to any other relief whatsoever.

100.     No response is required to Paragraph 100 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 100 of the Complaint.

101.     No response is required to Paragraph 101 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 101 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 101 or to any other relief whatsoever.

102.     No response is required to Paragraph 102 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 102 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 102 or to any other relief whatsoever.

103.     No response is required to Paragraph 103 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 103 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 103 or to any other relief whatsoever.

104.     No response is required to Paragraph 104 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 104 of the Complaint.

105.     No response is required to Paragraph 105 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 105 of the Complaint.  Defendants further deny that

Plaintiffs are entitled to the relief requested in Paragraph 105 or to any other relief whatsoever.

106.    No response is required to Paragraph 106 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 106 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 106 or to any other relief whatsoever.

107.    No response is required to Paragraph 107 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 107 of the Complaint.

108.    No response is required to Paragraph 108 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 108 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 108 or to any other relief whatsoever.

109.    No response is required to Paragraph 109 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 109 of the Complaint.

110.    No response is required to Paragraph 110 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 110 of the Complaint.  Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 110 or to any other relief whatsoever.

111.    No response is required to Paragraph 111 of the Complaint, because that paragraph does not contain any factual allegations.  To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 111 of the Complaint.

112. The allegations contained in Paragraph 112 of the Complaint are not directed at Defendants and, accordingly, no response to that paragraph is required. To the extent a response is required, Defendants deny the allegations contained in paragraph 112 of the Complaint.

113. No response is required to Paragraph 113 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 113 of the Complaint.

114. The allegations contained in Paragraph 114 of the Complaint are not directed at Defendants and, accordingly, no response to that paragraph is required. To the extent a response is required, Defendants deny the allegations contained in paragraph 114 of the Complaint.

115. Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116. No response is required to Paragraph 116 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 116 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 116 or to any other relief whatsoever.

117. No response is required to Paragraph 117 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 117 of the Complaint.

118. No response is required to Paragraph 118 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 118 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 118 or to any other relief whatsoever.

119. In response to the allegations contained in Paragraph 119 of the Complaint,

Defendants admit that Farmar filed a proof of claim in the related bankruptcy, but that the proof of claims speaks for itself. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 119 of the Complaint.

120. No response is required to Paragraph 120 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 120 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 120 or to any other relief whatsoever.

121. In response to the allegations contained in Paragraph 119 of the Complaint, Defendants admit that Mr. Navarro filed a proof of claim in the related bankruptcy, but that the proof of claims speaks for itself. Defendants otherwise deny the remaining allegations, if any, contained in Paragraph 121 of the Complaint.

122. No response is required to Paragraph 122 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 122 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 122 or to any other relief whatsoever.

123. The allegations contained in Paragraph 123 of the Complaint are not directed at Defendants and, accordingly, no response to that paragraph is required. To the extent a response is required, Defendants deny the allegations contained in paragraph 123 of the Complaint.

124. The allegations contained in Paragraph 124 of the Complaint are not directed at Defendants and, accordingly, no response to that paragraph is required. To the extent a response is required, Defendants deny the allegations contained in paragraph 124 of the Complaint.

125. No response is required to Paragraph 125 of the Complaint, because that paragraph

does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 125 of the Complaint.

126. No response to Paragraph 126 or each of its sub-parts is required because that paragraph and its sub-parts do not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 126 and each of its sub-parts. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 126 and each or its sub-parts, or to any other relief whatsoever.

127. No response is required to Paragraph 127 of the Complaint, because that paragraph does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in Paragraph 127 of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in Paragraph 127 or to any other relief whatsoever.

128. In response to the portion of the Complaint labeled "Prayer," Defendants state that No response is required to this portion of the Complaint, because that portion does not contain any factual allegations. To the extent a response is required, Defendants deny the allegations, if any, contained in the "Prayer" portion of the Complaint. Defendants further deny that Plaintiffs are entitled to the relief requested in the "Prayer" or to any other relief whatsoever.

## II.
### DEFENDANTS' AFFIRMATIVE DEFENSES

129. Defendants assert that Plaintiffs' claims are defeated in whole or in part because the Complaint fails to state a claim for which relief can be granted.

130. Defendants assert that Plaintiffs' claims are defeated in whole or in part by the doctrines of laches, estoppel, waiver, ratification and contributory negligence.

131.    Defendants assert that Plaintiffs' claims are defeated in whole or in part by the applicable statute of limitations.

132.    Defendants assert that Plaintiffs' claims are defeated in whole or in part by Defendants' right to an offset or set off.

133.    Defendants assert that Plaintiffs' claims are defeated in whole or in part due to fraud committed by Plaintiff.

134.    Defendants assert that Plaintiffs' claims are defeated in whole or in part by novation.

135.    Defendants assert that Plaintiffs' claims for exemplary damages against Defendants are barred and/or limited by the provisions of the United States Constitution, the Texas Constitution, and Tex. Civ. Prac. & Rem. Code § 41.001, et seq.

136.    Defendants assert that Plaintiffs' claims are defeated, in whole or in part, by the doctrine of unclean hands.

137.    Defendants assert that Plaintiffs' claims are defeated, in whole or in part, by the release and settlement.

## III.
### DEFENDANTS' COUNTERCLAIM AND THIRD-PARTY COMPLAINT

### A.  Jurisdiction And Venue

138.    Third-Party Plaintiff and Counter-Claimant Dr. Carlos Navarro ("Dr. Navarro"), is an individual residing in Dallas, Texas.

139.    Third-Party-Plaintiff and Counter-Claimant Michael Farmar ("Farmar") (collectively with Dr. Navarro "Third-Party Plaintiffs") is an individual and resident of the State of Texas and resides in Dallas, Texas.

140.    Counter-Defendant, James C. Musselman ("Musselman"), is an individual and has already appeared in this action.

141.    Third-Party Defendants Kimberly A. Elkjer ("Elkjer"), Curtis L. Marsh ("Marsh"), and Marvin R. Mohney ("Mohney") are all individuals residing in Dallas County, Texas.

142.    Scheef & Stone, L.L.P. ("Scheef & Stone") is a Limited Liability Partnership residing and doing business in Dallas County, Texas.

143.    Jurisdiction over the subject matter of the Third-Party Complaint and Counterclaim is proper in the district court under 28 U.S.C. § 1334(b) & (e).  The court has personal jurisdiction over Musselman, Elkjer, Marsh, Mohney, and Scheef & Stone (collectively "Third-Party Defendants") because all of them reside in Dallas County, Texas.

144.    Venus is proper under 28 U.S.C. §§ 1408, 1409.

## B.  Applicable Facts

### 1.  The Parties Enter Into the Binding Settlement Agreement

145.    On April 13, 2004, at an injunction hearing before Judge Jay Patterson, a Texas state district judge, in Dallas, Dallas County, Texas, the Farmar, Dr. Navarro, Third-Party Defendants and other parties read into the record a Rule 11 Agreement, which is hereafter referenced as the Binding Agreement.

146.    The Binding Agreement was a settlement of all the causes of action and issues between the Parties, which was pending in the case styled Cause No. 03-03314-K, *Avia Energy Development, LLC, et al. v. Carlos Francisco Navarro, et al.*, in the 192nd Judicial District Court, Dallas County, Texas.

147.    Pursuant to this Binding Agreement entered into between and among the Parties on

April 13, 2004, the Parties agreed to transfer money which was held in banks and/or by Courts in Mexico to an escrow account in Texas. The transfer of these funds was the *only* condition precedent to the Binding Agreement

148. The Parties also pledged to use their good faith efforts to have the money, which was tied up in Mexico, to be transferred to the United States to be distributed in accordance with the Binding Agreement. The Parties specified how the funds were to be divided once they were transferred to the United States. Before concluding the Binding Agreement, Judge Patterson requested that every party expressly state that they agree with the terms of the Binding Agreement. In response, each party—including Third-Party Defendants—expressly agreed on the record to the terms of the Binding Agreement. Moreover, counsel for Navarro made it expressly clear on the record that the Binding Agreement constituted a final binding agreement and envisioned further execution of only three documents—an assignment, a ratification, and a mutual release. In addition, the Binding Agreement also required that: (1) Musselman transfer his job ownership interest in Avia de Mexico to Dr. Navarro; and (2) Avia USA and Musselman ratify a prior transaction where Avia USA transferred 99% of Avia de Mexico to Dr. Navarro.

## 2. Farmar and Dr. Navarro Fulfill Their Obligations Under the Binding Agreement.

149. At the time the Binding Agreement was entered into in Open Court before Judge Jay Patterson on April 13, 2004, Farmar had appealed a default judgment entered against Avia de Mexico in the Mexican Court in Monterrey, Mexico in the amount of $1.4 million. As a result of that lawsuit, Farmar had garnished the amount of $1.4 million to satisfy his judgment against Avia de Mexico. Farmar had every expectation of prevailing in the Appeal and collecting on his $1.4 million judgment.

As a result of the Binding Agreement, and in reliance upon the representations made by Musselman and Musselman's attorneys, Farmar agreed to forego his right to appeal and have such money released by the Mexican Court and transferred to the escrow account in Texas.

150.     Dr. Navarro, in reliance on the Binding Agreement entered into in Open Court on April 13, 2004, made several trips to Monterrey, Mexico and was involved in extensive negotiations with various parties to ensure that the monies held in Bancomer and by the Mexican Courts were transferred to Texas. Dr. Navarro also retained Mexican counsel to assist with liberation of the funds.

151.     Farmar, in reliance on the April 13, 2004 Binding Agreement entered into in Open Court, also contacted and utilized the services of Mexican attorneys to make sure that the funds were transferred to Texas as provided by the Binding Agreement.

152.     Farmar, in reliance on the Binding Agreement entered into in Open Court on April 13, 2004, agreed to utilize the services of Southwest Bank of Texas to ensure that the money was properly transferred to the United States, that the exchange rate was as favorable as possible, and that the normal fees to transfer monies into the United States were waived. Farmar used his influence and goodwill with Southwest Bank to ensure that all the money coming from Mexico would be used to pay the Parties the sums due pursuant to the Binding Agreement.

153.     Dr. Navarro, in reliance on the Binding Agreement, used the services of Hector de la Pena, a well-recognized attorney in Mexico, to assist with various negotiating strategies with the banks to release the money, provide legal counsel regarding the way and manner in which the money should be released and transferred to the United States, to draft the Ratification and Assignment documents and to get the money released from the Court.

154.     Pursuant to the efforts of Dr. Navarro and Farmar, the money was transferred to an

escrow account at Southwest Bank of Texas in Houston. The amount of $2.5 million was transferred into the account and bears interest at approximately 1%. The total amount transferred is within 3% of the amount the Parties estimated would be received by the Binding Agreement on April 13, 2004. The transfer of these funds fulfilled the only condition precedent to the enforcibility of the Binding Agreement. Accordingly, the only remaining steps to be taken were: (1) execution of a Mutual Release; (2) execution of the Assignment and Ratification documents; and (3) proper distribution of the funds in accordance with the Binding Agreement. There only remained the ministerial task if executing certain documents by the Parties.

156. However, unknown to Farmar and Dr. Navarro, Third-Party Defendants never intended to abide by the terms of the Binding Agreement. Indeed, it has become clear that Third-Party Defendants never intended to abide by the terms of the Binding Agreement, but rather simply intended to have the funds transferred and then wrongfully take control of the funds.

### 3. Third-Party Defendants' Fraudulent Scheme Begins to Manifest Itself.

157. By letter dated September 17, 2004, W. Pruitt Ashworth, attorney for Farmar, provided the documents necessary to conclude the settlement: 1) Ratification; 2) Assignment; and 3) Mutual Release. Once these documents were signed and properly executed, the money could be distributed in accordance with the Binding Agreement.

158. With the funds transferred to the United States, the Third-Party Defendants started changing their positions to execute their fraudulent scheme to wrongfully seize control of the disputed funds.

159. At the hearing on April 13, 2004, the Third-Party Defendants insisted that an Agreed Mutual Temporary Injunction ("Agreed Order") be entered. As long as the monies were in Mexico,

the Third-Party Defendants insisted that the Agreed Order be extended for two 30 day periods. Remarkably, once the monies were transferred into the escrow account in Texas, Third-Party Defendants refused to agree to extend the Agreed Order. Subsequently, Third-Party Defendants started to repudiate portions of the Binding Agreement.

160.     Third-Party Defendants refused to sign the transfer or release documents and have ignored the Binding Agreement. The actions by Third-Party Defendants have made it impossible for the Parties to finalize the Binding Agreement and disburse the funds now held in escrow. Indeed, while refusing to abide by the terms of the Binding Agreement, Third-Party Defendants permitted a portion of the disputed funds to be garnished by a creditor. This creditor, Clay Tank, had obtained a joint and several judgment against Avia USA, Avia de Mexico and Musselman. Since permitting the garnishment satisfied a judgment for which Musselman was personally liable, Third-Party Defendants allowed the garnishment in furtherance of their scheme to use the funds for the benefit of Musselman.

161.     After the garnishment, Third-party Defendants continued with their scheme by placing Avia USA and Avia de Mexico into bankruptcy. Third-Party Defendants were well aware that neither debtor has any assets, income, business operations nor any substantial creditors beyond those already a party to the Binding Agreement. Nevertheless, Third-Party Defendants initiated this bankruptcy matter. Given the undisputed fact that neither debtor has any realistic probability nor reorganization, the only conceivable purpose of the bankruptcy filing was an attempt to avoid the terms of the Binding Agreement and enrich Musselman at the expense of Farmar and Dr. Navarro. Indeed, Third-Party Defendant Mohney admitted that under his analysis Musselman benefits from the bankruptcy proceeding because he will recover more in bankruptcy then he agreed to accept under the terms of

the Binding Agreement. Despite the clear bad-faith filing of the bankruptcy petition, Third-Party Defendant Mohney has consistently assisted Musselman, Marsh, Elkjer, and Scheef & Stone in advancing their scheme to defraud Dr. Navarro and Farmar.

162. Further evidence of Third-Party Defendants' conspiracy and fraudulent scheme was uncovered when Third-Party Defendants Musselman and Marsh admitted they never executed the escrow agreement that was circulated by Farmar and executed by Farmar and Dr. Navarro. While the Binding Agreement expressly characterizes the account that will receive the transferred funds as an escrow account, neither Marsh, Musselman, Elkjer, nor Scheef & Stone ever informed Farmar or Dr. Navarro that they would not execute the escrow agreement. Indeed, Musselman expressly characterized the account as an "escrow" account in written correspondence prior to the transfer of all of the disputed funds. In short, Third-Party Defendants conduct regarding the creation of the escrow account clearly demonstrates that Third-party Defendants were embarked on a scheme from the very beginning to defraud Dr. Navarro and Farmar.

163. Third-Party Defendants made numerous false statements regarding the Binding Agreement and their intention to comply with the terms of the Binding Agreement. In fact, Third-Party Defendants simply intended to defraud Dr. Navarro and Farmar by causing them to assist in the transfer of the disputed funds under the ruse of the Binding Agreement. Third-Party Defendants intended that Dr. Navarro and Farmar rely on the false statements and Dr. Navarro and Farmar did in fact rely, to their detriment, on the false statements. Since the disputed funds were transferred to the United States, Third-Party Defendants have continued to assist Musselman to avoid the terms of the Binding Agreement and to use the disputed funds for Musselman's benefit. Indeed, Third-Party Defendants' actions raise serious concerns regarding the improper filing of bankruptcy papers under

the Bankruptcy Code and Rules.

## C. Causes of Action

### 1. Third-Party Claim Against All Third-Party Defendants—Farmar's Claim of Fraudulent Inducement

164.     Third-Party Plaintiffs incorporate Paragraphs 138-163 herein.

165.     As a result of the hearing in Open Court before Judge Patterson on April 13, 2004, Farmar believed that the Third-Part Defendants, especially Musselman, would abide by the terms of the Binding Agreement.  Because the Binding Agreement was made before Judge Patterson, he believed that the Parties would act in good faith in making sure that everyone would cooperate and follow the terms of the Binding Agreement.

166.     It was in reliance on that representation, especially the representations of Third-Party Defendants Marsh, Elkjer, and Musselman, that Farmar took, on his part, all the necessary actions to ensure that the money was transferred to a bank in Texas.

167.     First and foremost, Farmar had tied up approximately $1.4 million in monies in a default judgment which he had obtained against Avia de Mexico in Mexico.  As stated earlier, Farmar had every reason, based on the law of Mexico and the representations of Mexican counsel, that he would prevail on appeal and be entitled to receive $1.4 million from the Mexican Court.

168.     Under the Binding Agreement, Farmar's claim was the largest amount of money that would fund the settlement.  It was in reliance on the representations of the Third-party Defendants, especially Musselman, that Farmar withdrew his appeal and made arrangements for the money—which he felt he was entitled to—be transferred to Texas.

169.     If Farmar had known that the Third-Party Defendants and Musselman had no intention

of living up to the terms of the Binding Agreement, Farmar would not have agreed to dismiss his lawsuit in Mexico and arrange for the money to be transferred to Texas.

170.     Musselman's attorneys, Third-Party Defendants Marsh, Elkjer, and Scheef & Stone consistently insisted that the Agreed Order be in place and extended while Farmar and Navarro were making diligent efforts to transfer the monies to Texas.  However, once the monies were in Texas, Musselman and Third-Party Defendants Marsh, Elkjer, and Scheef & Stone suddenly refused to agree to the extension of the Agreed Order, started attacking Navarro for various alleged failures, and attempted to set up a situation in which the Binding Agreement would not be enforced.

171.     Because of Third-Party Defendants' actions, it is clear to Farmar that Third-Party Defendants and Musselman falsely induced Farmar to take the necessary actions to get the monies back to Texas with no intention of living up to the Binding Agreement.

172.     Because of these acts, Farmar requests that the Court award him damages against Third-Party Defendants for $1.4 million, such interest to which he is entitled, and attorney's fees as part of his damages.

### 3.   Third-Party Claim Against All Third-Party Defendants—Navarro's Claim of Fraudulent Inducement

173.     Third-Party Plaintiffs incorporate paragraphs 138-163 herein.

174.     As a result of the hearing in Open Court before Judge Patterson on April 13, 2004, Navarro believed that the Third-Party Defendants, especially Musselman, would abide by the terms of the Binding Agreement.  Because the Binding Agreement was made before Judge Patterson, he believed that the Parties would act in good faith in making sure that everyone would cooperate and follow the terms of the Binding Agreement.

175. In reliance upon the representations of Third-Party Defendants, especially the representations of Musselman, Navarro took, on his part, all the necessary actions to ensure that the funds were transferred to a bank in Texas.

176. First and foremost, Navarro made multiple trips to Mexico to ensure that the funds, then tied-up in Mexican courts or Mexican bank accounts, were liberated, consolidated, and transferred to the United States as expeditiously as possible. In addition, Navarro retained Mexican counsel to assist in liberating and transferring the funds to the United States. In addition, Navarro also retained Mexican counsel to ensure that the transactions regarding the transfer of the funds and subsequent disbursement of the funds were properly formatted and documented so as to eliminate any potential tax liability in Mexico.

177. If Navarro had known that Third-Party Defendants and Musselman had no intention of living up to the terms of the Binding Agreement, Navarro would not have taken the steps or incurred the expenses to arrange for the money to be liberated, consolidated, and transferred out of Mexico.

178. Musselman and Third-Party Defendants Elkjer, Marsh, and Scheef & Stone consistently insisted that the Agreed Order be in place and extended while Farmar and Navarro were making diligent efforts to transfer the monies to Texas. However, once the monies were in Texas, Musselman and Third-Party Defendants Elkjer, Marsh, and Scheef & Stone suddenly refused to agree to an extension of the Agreed Order. Moreover, Musselman started to attack Navarro for failures of purported conditions precedent—even though the only real condition precedent (the transfer of the funds out of Mexico)—had already occurred. It became obvious that Musselman, acting in concert with Third-Party Defendants Elkjer, Marsh, and Scheef & Stone, was attempting to ignore

the Binding Agreement.

179.     Because of Musselman's actions, it is clear to Navarro that Third-Party Defendants falsely induced Navarro to take the necessary actions to get the funds transferred to Texas, while having no intention of living up to the terms of the Binding Agreement. Because of these acts, Navarro requests that the Court award him damages against Third-Party Defendants, including interest in attorney's fees, to which he is justly entitled.

### 4. Third-Party Claim Against All Third-Party Defendants—Civil Conspiracy

180.     Third-Party Plaintiffs incorporate Paragraphs 138-163 herein.

181.     Third-Party Defendants had a meeting of the minds to knowingly, maliciously, and willfully defraud Third-Party Plaintiffs and to interfere with, and deprive, Third-Party Plaintiffs of their rights in, and benefits from, the Binding Agreement. The Third-Party Defendants took steps to benefit themselves and/or others and to attempt to avoid the terms of the Binding Agreement. Third-Party Defendants, and each of them, set out to, and did, accomplish this result, causing damages to Third-Party Plaintiffs well in excess of three million dollars.

182.     All Third-Party Defendants, at a minimum, should be held liable, jointly and severally, for all actual damages incurred and all punitive damages awarded.

### 5. Third-Party Claim Against All Third-Party Defendants—Common Law Fraud

183.     Third-Party Plaintiffs incorporate Paragraphs 138-163 herein.

184.     By Musselman's and Third-Party Defendants' (Elkjer, Marsh, Scheef & Stone, and Mohney) silence and misrepresentations concerning Musselman's true intent and scheme regarding the Binding Agreement and the disputed funds, Third-Party Defendants, and each of them, have made material misrepresentations to Third-Party Plaintiffs which Third-Party Defendants knew were false

at the time they were made. Third-Party Defendants, and each of them, intended that Third-Party Plaintiffs act upon the misrepresentations and rely on them to protect their interests, which they did act upon to their detriment, resulting in damages to Third-Party Plaintiffs well in excess of three million dollars.

185.     Third-Party Plaintiffs have suffered injury and have been damaged by Third-Party Defendants actions and fraudulent conduct, and their damages were directly caused by Third-Party Defendants' actions.

## IV.
### DEFENDANTS' JURY DEMAND

186.     Defendants demand a trial by jury in this matter.

## V.
### CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Third-Party Plaintiffs pray that the Third-Party Defendants be cited to appear and answer herein; and that the Court render judgment in favor of Third-Party Plaintiffs against the Third-Party Defendants and Musselman for the relief sought by Third-Party Plaintiffs herein; that exemplary damages be assessed as requested herein; that Third-Party Plaintiffs recover their reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, costs of court; and that prejudgment and post judgment interest be awarded as provided by law. Third-Party Plaintiffs further pray for all such other relief, whether general or special, both at law and in equity, to which it is entitled.

Respectfully submitted,


By: /s/ Brian A. Farlow _____

**DEFENDANTS' ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT**

David W. Elrod
State Bar No. 06591900
Brian A. Farlow
State Bar No.  00795339


**ELROD, PLLC**
500 N. Akard Street
Suite 500
Dallas, Texas 75201
(214) 855-5188
(214) 855-5183 (Fax)

**ATTORNEYS FOR THIRD-PARTY DEFENDANTS CARLOS FRANCISCO NAVARRO, MICHAEL FARMAR & DAVID ELROD**


## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been served (1) on Curtis L. Marsh, counsel for Musselmen, via certified mail, return-receipt requested and (2) electronically by the court's PACER system on the 17th day of March 2006.


 /s/ Brian A. Farlow_____
David W. Elrod/Brian A. Farlow